**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 8, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STACEY D. PRIER,

      Plaintiff - Appellant,

v.

GARY E. STEED, SEDGWICK
COUNTY SHERIFF,

      Defendant - Appellee.

No. 05-3251

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 04-CV-1387-JTM)**

---

Larry G. Michel, Kennedy Berkley Yarnevich & Williamson, Chartered, Salina, Kansas for the Plaintiff-Appellant.

Ed L. Randels, Office of the County Counselor, Wichita, Kansas, for the Defendant-Appellee.

---

Before **TACHA**, Chief Judge, **BALDOCK,** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

Stacy Prier, a former employee of the Sedgwick County Sheriff's Office, appeals a district court declaratory judgment that she is prohibited from carrying a firearm under federal law following her conviction in Municipal Court in Wichita,

Kansas for disorderly conduct by fighting. Prior to final resolution of the declaratory judgment claim, Prier dismissed with prejudice her underlying claim that she was terminated from her employment in violation of the federal Family Medical Leave Act ("FMLA"). Because the FMLA claim was dismissed, no justiciable case or controversy exists as required by Article III of the constitution, and thus this case is now moot. For this reason, we **DISMISS** for lack of subject matter jurisdiction.

**I**

While employed as a Sedgwick County Deputy Sheriff, Stacy Prier slapped her husband during a domestic altercation at their home in Wichita, Kansas. She was charged with violating Wichita's domestic battery statute and, pending resolution of the charges against her, the Sheriff's Office relieved Prier of her firearm but allowed her to continue employment as a civilian. Prier became concerned that under the Brady Act, 18 U.S.C. § 922(g)(9), she would be permanently prohibited from carrying a firearm if she was convicted of domestic battery. Such a prohibition would prevent her from continuing her employment as a Sedgwick County Deputy Sheriff because she would be unable to maintain her certification as a law enforcement officer.[1] In an effort to avoid this result,

---

[1] 18 U.S.C. § 922(g)(9) (commonly referred to as the "Brady Act") provides that "[i]t shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in

(continued...)

Prier's counsel sought and obtained assurances from the prosecutor, Sedgwick County Sheriff Gary Steed, an attorney with the Sedgwick County Counselor's office, and additional Kansas law enforcement personnel that a guilty plea to a reduced charge of disorderly conduct would not affect her certification.[2]

Once Prier was sufficiently satisfied that her employment was not in jeopardy, she pled no contest to disorderly conduct by fighting in violation of Section 5.24.010(a) of the Code of the City of Wichita.[3]  Soon thereafter, Prier

---

[1](...continued)
interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

Section 921(a)(33) of title 18 defines a "misdemeanor crime of domestic violence" as an offense that:

> (i) is a misdemeanor under Federal or State law; and
> (ii) has, as an element, the use or attempted use of physical force or the threatened use of a deadly weapon, committed  by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

[2]  Prier's counsel admits that he discussed only the effects of a general conviction of disorderly conduct, as opposed to the more specific conviction of disorderly conduct by fighting.

[3] Section 5.24.010 of the Wichita Municipal Code defines "disorderly conduct" as follows:
Disorderly conduct is, with knowledge or probable cause to believe that such acts will alarm, anger or disturb others or provoke an assault or other

(continued...)

notified her supervisors at the Sheriff's Office about the outcome of her criminal proceedings and informed them that her conviction would not preclude her reinstatement. Based on Prier's representations, she was re-qualified for use of a firearm and resumed her position as a Deputy Sheriff.

Relations between Prier and her supervisor, Captain McKeel, grew sour during the following month. Prier tells us McKeel's displeasure was the result of his disappointment with her numerous absences immediately following her reinstatement, despite the fact that these absences were approved as family and medical leave. In any event, Captain McKeel obtained a copy of the court records relating to her conviction, and soon notified Prier that she had been recommended for termination. Two weeks later, Prier was terminated. In a letter explaining its decision, the Sheriff's Office informed Prier that she was fired because of her lengthy disciplinary history and her Municipal Court conviction, which reflected poorly on the Sheriff's Office. The Sheriff's Office's take on the matter was that her conviction precluded her from possessing a firearm under the Brady Act, making it impossible for her to do her job within the confines of federal law.

-----

[3](...continued)
breach of peace:
      (a) Engaging in brawling or fighting; or
      (b) Disturbing an assembly, meeting, or procession, not unlawful in its character; or
      (c) Using offensive obscene, or abusive language or engaging in noisy conduct, tending to reasonably arouse alarm, anger or resentment in others.

After failing to obtain relief through the Sheriff's Office's internal grievance procedures and Kansas state court system, Prier filed suit in federal court against Steed, alleging retaliatory discharge under the FMLA. Steed filed a motion to dismiss, arguing that her termination was clearly justified as she was unable to perform her job because she could not possess a firearm following her Municipal Court conviction. After the district court denied Steed's motion to dismiss, Prier amended her complaint to include a claim for a declaratory judgment that her Municipal Court conviction did not disqualify her from carrying a sidearm under federal law. Cross-motions for summary judgment were filed by the parties on the declaratory judgment claim. While those motions were pending, the parties agreed to dismiss the FMLA claim without prejudice. Citing our unpublished decision in Woods v. City and County of Denver, 62 Fed. Appx. 286, 290 (10th Cir. 2003), which held that construction of the Brady Act "standing alone, is not a cause of action, nor does it confer federal question jurisdiction," the district court found that the parties' joint dismissal of the FMLA claim deprived it of subject matter jurisdiction over the declaratory judgment action, and dismissed the case. The Declaratory Judgment Act does not extend the jurisdiction of federal courts; it only "enlarge[s] the range of remedies available. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950). Power to issue declaratory judgments must lie in some independent basis of jurisdiction. Id Because the FMLA claim was dismissed without prejudice, Prier

was able to file a second suit in federal district court using a complaint identical to the one previously dismissed. At the outset of the second litigation, the parties entered into a settlement agreement: Prier agreed to dismiss her claim under the FMLA with prejudice following resolution of the declaratory judgment action in exchange for the opportunity to be re-employed by the Sheriff's Office. Following the script laid out in the settlement agreement, both parties immediately filed cross-motions for summary judgment on the declaratory judgment claim, and the district court concluded that continued presence of the FMLA claim provided it with jurisdiction to resolve the declaratory judgment issue. Addressing the merits of Prier's claim, the district court entered a declaratory judgment that Prier's conviction disqualified her from carrying a sidearm under the Brady Act. Pursuant to their settlement agreement, Prier then moved to dismiss the FMLA claim with prejudice, which was granted. Prier now appeals the district court's grant of declaratory judgment in favor of Steed.

## II

Having dismissed her underlying FMLA claim with prejudice, Prier asks us to determine the validity of a defense to that claim. We cannot accommodate her request. Article III of the Constitution requires that we only decide cases or controversies, and thus prohibits us from resolving hypothetical legal questions like the one before us, relevant only to the resolution of an already dismissed dispute.

Although neither party has raised this issue, we have an obligation to conduct an independent de novo review to "determine whether a case is moot before proceeding to the merits." Citizens for Responsible Government State Political Action Committee v. Davidson, 236 F.3d 1174, 1182 (10th Cir. 2000). We review for mootness "not only . . . at the initiation of the lawsuit, but . . . at all stages of appellate or certiorari review." Fischbach v. N.M. Activities Ass'n, 38 F.3d 1159, 1160 (10th Cir. 1994).

"Constitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies." Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n, 327 F.3d 1019, 1028 (10th Cir. 2003) (internal quotation and citations omitted). If the issues in a case before us are "no longer live or the parties lack a legally cognizable interest in the outcome," the case is moot. Davidson, 236 F.3d at 1182 (internal citations and quotations omitted). A case may also become moot "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever to a prevailing party.'" Church of Scientology of Ca. v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). "The crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world." Davidson, 236 F.3d at 1182 (internal citations and quotations omitted). Cf. Utah Animal Rights Coal. v. Salt Lake City Corp., 371 F.3d 1248, 1263 (10th

Cir. 2004) (McConnell, J., concurring) ("It is not enough that a plaintiff wishes to have the moral satisfaction of a judicial ruling that he was right and his adversary was wrong; the relief sought must have legal effect in determining the present and future rights and obligations of the parties.").

Actions under the Declaratory Judgment Act must comport with the same mootness principles as any other suit. Cardtoons L.C. v. Major League Baseball Players Ass'n, 95 F.3d 959, 965 (10th Cir. 1996); Miller v. Udall, 368 F.2d 548, 549 (10th Cir. 1966). Such actions will be moot unless the effect of our decision settles "some dispute which affects the behavior of the defendant toward the plaintiff." Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1348 (10th Cir. 1994).

Prier contends that this dispute is not moot. Her "employment with the Sheriff," she argues, "is completely dependent on the legal effect of her municipal court conviction." Steed agrees, noting Prier dismissed her FMLA claim in exchange for the "opportunity" to be re-employed by the Sheriff's Office "subject to the decision in the declaratory judgment action." Both parties are mistaken: Any decision on our part would not resolve a "dispute which affects the behavior of the defendant toward the plaintiff." See Cox, 43 F.3d at 1348.

In Calderon v. Ashmus, 523 U.S. 740, 746 (1998), the Supreme Court addressed an analogous issue. There, an inmate sought a declaratory judgment that a federal habeas petition he planned to file would not be untimely under the Antiterrorism and Effective Death Penalty Act. The Court held that no justiciable

- 8 -

case or controversy under Article III was presented because the underlying controversy was whether respondent was entitled to federal habeas relief, and a decision by the Court would not resolve that controversy. Id. "[A]ny judgment in this action would not resolve the entire case or controversy . . . , but would merely determine a collateral legal issue governing certain aspects of their pending or future suits," and would have "have no coercive impact on the legal rights or obligations of either party." Id. at 747, 749. The Court specifically stated that parties cannot bring declaratory judgment claims as to the validity of a defense that may be raised in a future suit. Id. at 747.

Before us, the underlying controversy between these parties is whether the Sheriff's Office illegally terminated Prier. When Prier originally filed suit in federal court alleging that her termination violated the FMLA, a case and controversy was clearly present. However, the parties no longer seek a determination as to the lawfulness of the actions of the Sheriff's Office; Prier dismissed that claim with prejudice. All that remains is a claim for a declaratory judgment with respect to a collateral legal issue, whether Steed's affirmative defense to Prier's claim under the FMLA was valid.

Resolution of this issue will have no coercive effect on the legal rights or obligations of either party. It is true that Prier's employment with the Sheriff's Office as a deputy is dependent on her ability to obtain certification as a law enforcement officer. However, a declaratory judgment by this court that Prier is

able to carry a firearm may provide Prier with the opportunity for reinstatement, but will not provide Prier with a legal basis to demand reinstatement, or require the Sheriff's Office to change its behavior in any way toward Prier. Moreover, Prier has not demonstrated a good chance of being likewise injured in the future: Indeed, she has dismissed her claim to having been injured at all. See Facio v. Jones, 929 F.2d 541, 544 (10th Cir. 1991) (holding that plaintiff cannot maintain an independent declaratory judgment action unless he or she "can demonstrate a good chance of being likewise injured in the future"). As such, a declaratory judgment in favor of Prier "would amount to nothing more than a declaration that [she] was wronged." Green v. Branson, 108 F.3d 1296, 1300 (10th Cir. 1997).

Steed concedes that our jurisdiction is "tenuous," but argues we should determine, nonetheless, that jurisdiction exists in this case. His arguments are clearly meritless. That the parties stipulate that jurisdiction exists is of no import. "[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant" Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982); nor does Steed's claim that the parties relied on our subject matter jurisdiction in agreeing to fully dismiss the FMLA claim affect our conclusion that the case is moot. Contrary to Steed's suggestion, there is no general federal "reliance" jurisdiction. Id. ("Principles of estoppel do not apply"). Article III permits federal courts only to decide cases or controversies, and the actions of the parties cannot rewrite the

limitations imposed by the constitution. These legal propositions should not surprise the parties; they are the same ones articulated by the district court in its order dismissing this case for lack of jurisdiction before Prier refiled her complaint.[4] Finally, the agreement that Prier has the opportunity to reapply for her position as a Deputy Sheriff if we issued a declaratory judgment favorable to her does not confer jurisdiction on this court. Federal courts do not have jurisdiction to settle wagers between citizens about the meaning of federal law. A conclusion that jurisdiction exists in this case would significantly undermine the case or controversy requirement of Article III.

## III

Accordingly, the case is **DISMISSED**. See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 28 (1994) (proper procedure for addressing cases that become moot on appeal due to settlement is dismissal, not vacature).

---

[4] Because we conclude that the case is moot, we need not address a second underlying question raised by this appeal: whether the parties colluded to create an actual case or controversy before the district court. Steed states in his brief that, when Prier refiled her complaint after it was dismissed for lack of jurisdiction, "it was the intent of the parties [for] the [district] court to construe [certain Brady Act] provisions." It is clearly established that colluding to create federal jurisdiction is strictly prohibited. United States v. Johnson, 319 US 302, 305 (1943).