**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**September 15, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

CALVARY ALBUQUERQUE INC.;
STEFAN DAVID GRANT GREEN;
KEILAH ANNA GREEN; H.P.G., a
minor,

      Plaintiffs - Appellants,

v.

MARCO RUBIO, U.S. Secretary of
State; U.S. DEPARTMENT OF STATE,
an Agency of the United States; OFFICE
OF THE LEGAL ADVISER FOR
CONSULAR AFFAIRS; U.S.
CONSULATE JOHANNESBURG; U.S.
CONSULATE CAPE TOWN;
UNKNOWN CONSULAR OFFICER,

      Defendants - Appellees.

No. 24-2066
(D.C. No. 1:23-CV-00486-KWR-KK)
(D. N.M.)

_____

**ORDER**
_____

Before **MATHESON**, **BACHARACH**, and **FEDERICO**, Circuit Judges.
_____

We find this case is moot, vacate our judgment and opinions, and remand to

the district court with instructions to vacate its judgment.

Stefan Green, a South African citizen, sought an R-1 visa to serve as the

worship leader at Calvary Albuquerque church.  A State Department consular officer

found Mr. Green inadmissible and denied his visa application based on misrepresentation.  *See* 8 U.S.C. § 1182(a)(6)(C)(i).

Calvary sued, alleging the consular officer violated its rights under the Religious Freedom Restoration Act.  The district court dismissed the complaint and denied a preliminary injunction, holding the consular officer's decision to deny the application was unreviewable.  On May 6, 2025, we affirmed and entered judgment.  Dkt. Nos. 43, 44.  Calvary filed a petition for rehearing en banc.  Dkt. No. 45.  Soon after, Mr. Green received an R-1 visa.  Dkt. Nos. 53 at 14, 56 at 2.  The Government filed a response to the rehearing petition.  Dkt. No. 53.

The parties agree that, while this case was pending, Calvary petitioned U.S. Citizenship and Immigration Services ("USCIS") for a new R-1 visa for Mr. Green, which USCIS approved.  Dkt. Nos. 55 at 5, 60 at 7-8.  Mr. Green then filed a new R-1 visa application, and after U.S. Customs and Border Protection ("CBP") granted a waiver to the prior inadmissibility finding, the U.S. Consulate in Cape Town, South Africa approved Mr. Green's application and issued him an R-1 visa on July 9, 2025, Dkt. Nos. 53 at 14, 55 at 1, 5, 56 at 2, 60 at 7-8, two months after this court issued its decision and entered judgment, Dkt. Nos. 43, 44.

We ordered supplemental briefs to address whether this case is moot.  We also ordered the parties to file responses to each other's brief.  The Government argues this case is moot but we should not vacate the judgment.  Calvary argues this case is not moot, but if it is, we should vacate the judgment.

2

A. *Mootness*

We agree with the Government that this case is moot.

Under Article III of the Constitution, federal courts may decide only "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. The mootness doctrine ensures a plaintiff's action remains a case or controversy. *Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016). "[T]he crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1165 (10th Cir. 2023) (quotations omitted). Thus, "a case becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision." *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (quotations omitted). That has happened in this case.

In its complaint, Calvary sought declaratory relief for the "denial of Mr. Green's R-1 visa." App. at 75. It also sought an order for the Government "to immediately reopen and adjudicate Mr. Green's R-1 visa case." *Id.* The R-1 visa has now been granted, Mr. Green may now serve as one of Calvary's ministers, and Calvary has obtained the relief it sought.[1] Granting Calvary's requested relief would therefore have no "effect in the real world." *Rio Grande Found.*, 57 F.4th at 1165; *see also Sustaita-Cordova v. Garland*, 120 F.4th 511, 517 (5th Cir. 2024) ("Because

---

[1] An R-1 visa is the same visa Mr. Green originally sought. *See Kolev v. Dep't of Homeland Sec'y*, 138 F. App'x 3, 4 (9th Cir. 2005) (unpublished) (case moot when U.S. consulate granted plaintiff's "visa approximately five weeks after initially denying it").

neither his U visa nor accompanying waiver application is still pending, it is impossible for this court to grant him any effectual relief." (quotations omitted)). The case is moot, and no exception to mootness applies.

The exception for "capable of repetition, yet evading review," *Brown*, 822 F.3d at 1166, does not apply. If a consular officer denies a visa to Mr. Green in the future, Calvary would have ample time to seek judicial review, just as it did here. The "duration" would not be "too short to be fully litigated prior to cessation or expiration." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (quotations omitted).

The voluntary cessation exception, "designed to counteract gamesmanship" by the defendant, *N.M. Health Connections v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1138, 1159 (10th Cir. 2019), does not apply. Calvary petitioned USCIS for an R-1 visa for Mr. Green, which was approved, and then Mr. Green applied for an R-1 visa. Dkt. Nos. 53 at 14, 55 at 5, 56 at 2, 60 at 7-8. After CBP granted an inadmissibility waiver, the U.S. Consulate in Cape Town issued Mr. Green his R-1 visa. Dkt. Nos. 53 at 14, 56 at 2, 60 at 8. "Nothing in the record presented to us indicates the [granting of the R-1 visa] at issue constitutes a 'voluntary cessation' of illegal conduct made in an effort to evade judicial review or avoid judgment by temporarily altering questionable behavior." *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 893 (10th Cir. 2008). Rather, Calvary, Mr. Green, and government decisionmakers acted to secure Mr. Green an R-1 visa through the normal visa process, which led to mooting this case. The voluntary-cessation

exception is inapplicable when "the controversy has become moot through the normal course of events rather than through the unilateral action of the defendant." *O'Connor v. Washburn Univ.*, 416 F.3d 1216, 1222 (10th Cir. 2005). In light of what happened, dismissal for mootness would not "permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012).

The collateral consequences exception does not apply. Calvary has not identified a collateral or secondary injury that is more than speculative or hypothetical. *See Kan. Jud. Rev. v. Stout*, 562 F.3d 1240, 1248 (10th Cir. 2009) (noting that "allegations of collateral consequences" "so imbued with speculation and remoteness" "cannot serve as a foundation for our circumspect jurisdictional inquiry"). Calvary argues the inadmissibility finding "prohibits Calvary from permanently retaining Mr. Green." Dkt. No. 56 at 8. But whether in future years Calvary chooses to retain Mr. Green, whether Mr. Green wishes to stay in the United States, whether he applies for another R-1 visa or for permanent residency to serve as a minister at Calvary, and whether the previous inadmissibility finding would affect a State Department official's decision are conjectural.[2] *See, e.g., Schell v. OXY USA Inc.*, 814 F.3d 1107, 1115 (10th Cir. 2016) ("Concerns over the preclusive effect of an adverse judgment or other matters relating to a hypothetical

---

[2] Mr. Green's current R-1 visa expires on May 2, 2027. Calvary may petition so that Mr. Green could seek extension of his R-1 status for 30 months while remaining in the United States. *See* 8 C.F.R. § 214.2(r)(4)(i), (5).

unfiled suit are not cognizable reasons for continuing litigation that is otherwise moot.").

B. *Vacatur*

We agree with Calvary that the district court's judgment should be vacated.

"When a case becomes moot pending appeal, the general practice is to vacate the judgment below and remand with directions to dismiss." *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1213 (10th Cir. 2005). But we have discretion not to vacate because vacatur is an equitable remedy. *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994); *Rio Grande Silvery Minnow v. Keys*, 355 F.3d 1215, 1220 (10th Cir. 2004) ("Whether any opinion should be vacated on the basis of mootness is an equitable question.").

We have guidance from the Supreme Court. Under *United States v. Munsingwear*, 340 U.S. 36 (1950), if mootness occurs by "happenstance"—the parties are not responsible that it happened—the judgment below should be vacated. *Id.* at 39-40. But under *U.S. Bancorp Mortgage Co.*, when a settlement or some other event within the losing party's control moots the case, vacatur may not be appropriate. 513 U.S. at 25-26. The decision turns on "the conditions and circumstances of the particular case." *Azar v. Garza*, 584 U.S. 726, 729 (2018) (quoting *United States v. Hamburg–Amerikanische Packetfahrt–Actien Gesellschaft*, 239 U.S. 466, 478 (1916)).

This court has counseled against vacatur when "mootness is a result of a voluntary act of a nonprevailing party." *Wyoming*, 414 F.3d at 1213. And we have declined to

6

vacate when mootness arose after we had issued our judgment on appeal. *Bastien v. Off. of Senator Ben Nighthorse Campbell*, 409 F.3d 1234, 1235 (10th Cir. 2005).

We exercise our equitable discretion to vacate here. The issuance of the R-1 visa to Mr. Green was not mere "happenstance," but it also was not solely the product of Calvary's actions. Although Calvary, the nonprevailing party, petitioned for the R-1 visa, both party and non-party actions then led to the visa: The USCIS granted the petition, Mr. Green applied for the visa, CBP granted an inadmissibility waiver, and a consular officer approved the application. And although our panel decision preceded issuance of the visa, dismissal for mootness without vacatur would leave a divided panel opinion and our judgment in place, which may have a preclusive effect without Calvary's having had the opportunity to receive a ruling on its petition for rehearing en banc or to seek Supreme Court review. We thus find vacatur to be the proper course.

## C. **Conclusion**

We dismiss this matter as moot, vacate our May 6, 2025 judgment and opinions, and remand to the district court with instructions to vacate its judgment and dismiss this suit without prejudice.[3] We also deny as moot Calvary's petition for rehearing en banc.

---

[3] "It is fundamental, of course, that a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore dismissal . . . must be without prejudice." *Abernathy v. Wandes*, 713 F.3d 538, 558 (10th Cir. 2013) (quoting *Martinez v. Richardson*, 472 F.2d 1121, 1126 (10th Cir. 1973)).

This order removes both the *res judicata* and *stare decisis* effect of the vacated judgment and majority opinion.  "We do not depublish our [majority and dissenting] opinion[s], however, because such action would not have additional legal effect and the opinion[s] may be useful to someone in the future simply as a description of the course of this case."  *City Ctr. W., LP v. Am. Mod. Home Ins. Co.*, 749 F.3d 912, 914 (10th Cir. 2014) (quotations omitted); *see also United States v. Tyree-Peppers*, 107 F.4th 1271 (2024) (deciding the same).

Entered for the Court,

PER CURIAM